PHILLIP A. TALBERT
United States Attorney
KAREN A. ESCOBAR
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH D. SANFORD,<br>aka Joe Don Sanford,<br>aka Joe D. Sanford,<br><br>Defendant. | CASE NO. 1:19-CR-270 JLT-SKO<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>DATE: April 22, 2022<br>TIME: 9:00 a.m.<br>COURT: Hon. Jennifer L. Thurston |

The United States of America, by and through its undersigned counsel, hereby sets forth its position as to the sentence to be imposed on Defendant Joseph D. Sanford ("Sanford") in this case. The presentence report correctly calculated the applicable United States Sentencing Guidelines Total Offense Level to be 13 with a guidelines range of 12 to 18 months' imprisonment and applicable fine range of $5,500 to $55,000. The government recommends a below Guidelines sentence of 10 months for the reasons set forth in its sealed filing and herein, along with a $55,000 fine. As set forth below, a sentence of less than 10 months in prison would not be in the interest of justice.

## I. PROCEDURAL HISTORY

A grand jury returned a three-count indictment on December 13, 2019, charging Sanford with violations of the animal fighting prohibitions of the Animal Welfare Act, 7 U.S.C. § 2156. (Doc. 1.) Sanford entered into a guilty plea to conspiring to violate the Animal Welfare Act by agreeing with others to sell, buy, possess, train, transport, deliver, and receive game fowl for the purpose of having

roosters participate in animal fighting ventures, as charged in count one of the indictment. (Doc. 48.)

The final presentence report issued February 18, 2022. (Doc. 52.) In the report, the probation officer recommended a high-end Guidelines sentence of 18 months in prison and a fine of $25,000. (PSR at 19.)

## II. LEGAL FRAMEWORK

The Animal Welfare Act makes it unlawful, in pertinent part, to "knowingly sell, buy, possess, train, transport, deliver or receive any animal for purposes of having the animal participate in an animal fighting venture." 7 U.S.C. § 2156(b). An "animal fighting venture" is defined as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." 7 U.S.C. § 2156(g)(1).

Sanford pleaded guilty to count one, which charges a conspiracy to commit a violation of the Animal Welfare Act by buying, selling, delivering, possessing, training, or transporting animals for participation in an animal fighting venture. 7 U.S.C. § 2156(b); 18 U.S.C. § 371. This violation is punishable by up to five years in prison. 18 U.S.C. § 49. The government will move to dismiss the remaining counts at sentencing.

## III. BACKGROUND REGARDING COCKFIGHTING

Cockfighting is organized, moneymaking, and cold-blooded entertainment at the expense of the animals involved. It is illegal under federal law and in all 50 states. Cockfighting is an extreme form of cruelty to animals. Not only do the animals suffer grave injuries and frequently die during the fights, but they are also mistreated before and after the fights. Roosters used for fighting have their waddles, combs, and spurs crudely dubbed, or amputated, for the purposes of facilitating fights. A referee supervises the fights between the roosters. The fight ends when one rooster dies or refuses to continue to fight. If not killed during the fight, the losing rooster is usually killed after the fight. If both roosters are paralyzed or too injured to continue at the end of a fight, but have not yet died, handlers place both birds in a small enclosure known as the "drag pit" to wait to see which one dies first–a process that can take hours or even days. A series of cockfights conducted in a day is referred to as a derby. A derby usually consists of dozens of individual cockfights lasting several hours depending on the number of entries.

One of the more detailed descriptions of a cockfighting operation was given by a California

appellate court in *People v. Baniqued*, 101 Cal. Rptr. 2d 835 (Cal. App. 3 Dist., 2000), which described the conduct that Sacramento County Sheriff's Department deputies encountered as "a scene of undeniable horror." *Id*. at 837. *Baniqued* involved a derby in a large barn with about 100 persons in attendance and, in the end, scores of dead birds in a burn barrel. *Id*. at 837-838. There were "weapon[s]" in the form of "curved, pointed and very sharp knives or gaffs" attached to the roosters' legs. *Id*. at 838.

The court in *Baniqued* relied on an expert witness from the Humane Society of the United States ("HSUS"), Eric Sakach, who testified that the purpose of the "gaffs" is "to inflict lethal wounds." *Id*. They resemble "curved ice picks or needles" and tend to cause puncture wounds. *Id*. Cockfights usually last only five to ten minutes because the gaffs "cause so much damage to the birds that one or both are mortally wounded fairly quickly." *Id*. Mr. Sakach also assisted in the investigation of this case and is available to testify in the sentencing of this case, should the Court need additional information.[1]

Animals are not the only victims in animal cruelty cases. There is overwhelming evidence that animal abuse is linked to other forms of criminal conduct, particularly interpersonal violence. *See, e.g.*, McPhedran, *Animal Abuse, Family Violence, and Child Wellbeing: A Review*, 24 J. Fam. Violence 41-52 (2009). In addition, cockfighting is closely linked to other criminal and gang activities which often lure juvenile participants and pose a threat to community safety. *See generally* Mary Lou Randour & Tio Hardiman, *Creating Synergy for Gang Prevention: Taking a Look at Animal Fighting and Gangs* (2007).

Cockfighting is not only a barbaric form of animal cruelty, but a public health risk. Cockfighting is associated with the spread of deadly diseases, such as the fatal Viral Newcastle's Disease and avian flu, which can spread to humans.[2] *See, e.g.*, "Cockfighting, Crowing and Deadly Bird Virus Spur

---

[1] Mr. Sakach's qualifications were provided in the discovery materials at Bates Stamp numbers 11041-44.

[2] It is common for handlers of gamecocks to suck the blood out of the rooster's neck to keep it from drowning so it can fight another round. This technique promotes the spread of avian disease in humans. *See*, *e.g*., Tim Rogers, *Is that a Rooster in Your Mouth?,* Time*,* Feb. 16, 2007*,* http://www.content.time.com/time/world/article/0,8599,1590985,00.

Rooster Limits in LA County,"(10-1-18), https://www.citywatchla.com/index.php/2016-01-01-13-17-00/animal-watch/16293-cockfighting-crowing-and-deadly-bird-virus-spur-rooster-limits-in-la-county; "Avian Influenza and Cockfigthing," (2-23-06), http://www.upc-online.org/poultry_diseases/22306flu_cockfighting.html.

## IV. THE INVESTIGATION

The facts are accurately detailed in the presentence report. In addition, the following information detailed in discovery is relevant in assessing the nature and extent of the defendant's criminal conduct involved in this case.

### A. Background

The underlying investigation was initiated in July 2018 when the U.S. Department of Agriculture-Office of Inspector General ("USDA-OIG") received a referral from the HSUS regarding Sanford, who resided at a 10.26-acre property in Ceres, California where he had thousands of fighting roosters and hens for them.

Sanford is well-known in cockfighting circles throughout the United States and abroad. He and his gamecocks have participated in major cockfighting events, such as the World Slasher Cup in Manila and Golden Rooster Tournaments in Peru and Mexico.[3] His reputation, which is touted on social media sites, such as Facebook, YouTube, and Sabong, a Filipino cockfighting website, has translated to a successful breeding and sales operation at his home base in Ceres. Customers have also posted photos and videos showing gamecocks sparring at Sanford's business, Joe Sanford Gamefarm, located on his property in Ceres.

For example, on March 3, 2017, Bakbakan NA TV, a Filipino television network, posted on its Facebook a video of an interview with Sanford. In the interview, Sanford admitted that he had been breeding Yellow-Legged Hatch, Sweater, and Kelso roosters since the early eighties. These breeds are

---

[3] *See* Government Exhibit A, attached hereto, containing photos bearing Bates Stamp numbers 1401-07, of Sanford cockfighting at the World Slasher Cup, the "biggest, most prestigious international cock derby that attracts the best breeders and cock fighters from the Philippines and around the world." *See* World Slasher Cup website, https://www.worldslashercup.ph/.

among the top fighting breeds in cockfighting. *See*, *e.g*., *Gamefowl Fighting Styles!*, Gamefowl Cir. (Feb. 4, 2014), http://www.reach-unlimited.com/p/960084196/gamefowl-fighting-styles. Sanford also admitted that two years before he had teamed up with a shipper of his fighting birds to the Philippines.

In May 2017, a search warrant obtained in a separate case for evidence of cockfighting was executed in Val Verde in southern California. Nine of the gamecocks found at the site had "Joe Sanford" monogram tags affixed to their wing or leg. They were vented (having cut vent feathers), dubbed (combs and wattles cut off), and had their spurs cut. Such alterations are commonly done to enhance the fighting abilities of gamecocks. Breeders often pluck the birds' feathers and remove the roosters' wattles and/or combs (the flesh at the top of their heads and under their beaks) to prevent other roosters from tearing them off in the ring. Since roosters do not have sweat glands, losing these body parts deprives them of the ability to cool themselves. Breeders also often cut off the birds' spurs, which are the natural bony protrusions on the legs to better allow the strapping of weapons to their legs.

On January 4, 2018, a video was posted on the Facebook page for RLG Monkayo Gamefarm with a caption that read:

> With Joe Sanford . . . during our selection for RLG MONKAYO gamefarm breeding materials at Joe Sanford Gamefarm, Ceres, California, USA. The source of my Sweater & Yellow Legged Hatch bloodlines.

On January 6, 2018, a video was posted on the Facebook page for RLG Monkayo Gamefarm, which showed SANFORD sparring gamecocks at JOE SANFORD GAMEFARM with the caption:

> During my visit last November 2017 at Joe Sanford Gamefarm, Ceres, California, USA. Stag sparring together with Joe Sanford . . . for the selection of my breeding materials.[4]

### B. Undercover Operation

On September 24, 2018, USDA-OIG conducted a recorded undercover (UC) operation involving the purchase of a trio of fighting birds (two hens and one Sweater rooster) by an agent and confidential informant ("CI") from Sanford. During the UC operation, Sanford sparred roosters and discussed the fighting abilities of his gamecocks. Sanford also discussed the cockfighting derbies he had participated

[4] The foregoing videos were obtained pursuant to search warrants executed in this case and were authenticated by the provider.

in and the fighting instruments used in the derbies, *i.e*. short versus long knives.[5]

After selecting the rooster, Sanford directed one of his employees to take the agent and the CI to a different area of the farm where the female hens were located and they selected two hens. They then met with Sanford in his office. At that time, Sanford placed gold leg bands engraved with the words J. SANFORD on the hens. *See* Government Exhibit at Bates Number 1454. When the CI asked Sanford, "So you said you've done good with these in Mexico?" Sanford stated he had done "real good in Mexico, bred just like that." The CI also asked Sanford about short knives and gaffs. Sanford stated, "I find a lot of short knives now, that's where the money is . . . no money in gaffs." The agent purchased the two hens and rooster from Sanford with $1,100 in cash.[6]

**C. <u>Search of Cockfighting Operation</u>**

On April 16, 2019, a federal search warrant was executed at Joe Sanford Gamefarm. The agents located 367 fighting roosters, including Yellow Legged-Hatch, Kelso and Sweater breeds, 334 hens of the same breeds, and 2,255 pullets, or young hens, for a total of 2,956 birds. All of the roosters were housed individually in cages or attached by rope to a stake next to a small structure serving as shelter for the birds, which is consistent with the manner in which gamecocks are housed since they are too aggressive to cohabit. The agents also seized from Sanford's business office handwritten inventory notes reflecting inventory of fighting birds from 2015 to 2019. There was no evidence that Sanford was a legitimate egg or poultry producer.[7]

In Sanford's residence on the property, there was a DVD in the living room of an interview with Sanford at what appeared to be his property. In the interview, Sanford is introduced as "Chicken Joe," a "Professional Chicken Fighter/World Renown Chicken Fighter." When the camera pans over the property, the narrator states, "This has all been paid for by chickens. . . . This guy does it first class. And it is illegal." The narrator also mentioned that he was not referring to Sanford by his last name "so

[5] 7 U.S.C. § 2156(d) criminalizes the possession of sharp instruments, such as knives and gaffs, used in cockfighting.

[6] According to the case agent, the average cost of a rooster in the area of Joe Sanford Gamefarm is between $5 and $20 and the average cost of a hen is between $5 and $12.

[7] The number of adult roosters to adult hens located at Joe Sanford Gamefarm is consistent with a cockfighting operation. In a legitimate chicken breeding operation, there are typically significantly more adult hens to roosters. In an egg-producing operation, no roosters are needed.

the government won't know how much he makes." In the video, Sanford makes the following statements reflecting his involvement in cockfighting:

- "There's three different ways they fight these roosters."
- "They fight them in the short knife, long knife, and gaff."
- "Gaff is American; white guy; English way to fight them."
- "The Filipino long knife used by Filipinos; 3 inches."
- "Gaffs, you put one on each leg, short knife and long knife goes on the left leg, one leg only."
- "In Arizona and Oklahoma, the purse is usually over $50k."
- "They hold three big tournaments in Phoenix, Arizona, starts in February; last year we went to it, and there was 86 entries in the first day, at $1500 an entry, so you're talking about over $130k."
- "Gaffs are more expensive."
- "Short knives will run you about $100 a dozen; razor sharp."
- "This is the boot right here, goes over the roosters' leg and spur."
- "The knife sits on the boot just like that."
- "This is the short knife on the roosters' leg; this is the boot, and when you get ready to fight you remove the boot just like this."
- "I can tie the long knife, the short knife."[8]
- "Long knife is the hardest to tie; but they're both just as deadly."
- "Doesn't take long to kill a rooster with the long knife."
- "I shipped 60 roosters to the Philippines last December for $300 a rooster."
- "Yep, I've got some pretty good roosters; good blood."

The agents located various antibiotics and medications that were manufactured outside of California and used for conditioning gamecocks. There were also boxes of syringes for administering the medications and scalpels used for dubbing.

---

[8] Typically, the knives or gaffs are tied to the gamecock's leg with waxed string. http://www.content.time.com/time/world/article/0,8599,1590985,00.

In addition to the handwritten fighting bird inventories, there were (1) notes about the birds and their breeding, training and conditioning, customers, and derbies; (2) literature and material about cockfighting, including a "Pit Games" magazine featuring Sanford and Manny Pacquiao, one of Sanford's former customers;[9] (3) a training effigy for sparring; (4) handwritten receipts for cash transactions starting from 2003 and generally reflecting cash transactions of $1,000 or more; and (5) approximately $8,850 in cash. One of the conditioning notes is entitled "Fight" and explains the conditioning procedure two weeks from and leading up to "Fight day."

According to an agent of the Internal Revenue Service ("IRS") who assisted in the investigation, Joe Sanford Gamefarm is entirely a cash business. It is unincorporated and has no EIN. The cash is never deposited into a bank account. One of Sanford's employees was interviewed during the execution of the search warrant. He indicated that he was paid $400 per week, lived in a trailer for free and did not pay for utilities. He did not receive a Form W-2 or 1099 and did not file taxes. He said that people who purchase gamecocks from Sanford usually ship them to the Philippines or Mexico. He also said that Sanford regularly receives invitations to participate in cockfighting events in the Philippines.[10]

Cell phones were also seized during the execution of the search warrant at Sanford's property. Forensic examination of those phones revealed Sanford's large-scale international and domestic involvement in the cockfighting business. One text in October 2017 indicates that "Joe has 300 chickens shipping to Mexico." Other customers texted videos of roosters that had won cockfights and photos of cockfighting instruments.

Shipment records seized from Joe Sanford Gamefarm indicate that between November 2016 and March 2019 Sanford made nine intrastate shipments. Two of those shipments were to Bell Gardens, an area subject to quarantine due to the Virulent Newcastle Disease.[11] These shipments required a

---

[9] *See* Government Exhibit B, attached hereto. Pacquiao has since renounced cockfighting. *Manny Pacquiao Gives Up Cockfighting, Womanizing, and Other Bad Habits*, Boxing Insider (2-13-12), https://www.boxinginsider.com/headlines/manny-pacquiao-gives-up-cockfighting-womanizing-and-other-bad-habits/.

[10] Records obtained from Customs and Border Protection indicate that Sanford traveled at least 32 times to Mexico and the Philippines from 2008 to 2019.

[11] According to the California Department of Food and Agriculture, Virulent Newcastle Disease, an acute viral infectious fever affecting poultry, was first detected in May 2018 in Los Angeles County and spread extensively throughout Southern California, resulting in a quarantine that ended June 1,

Certificate of Veterinary Inspection (CVI) from a veterinarian to the California Department of Food and Agriculture. Sanford failed to meet that requirement.

**D. <u>Constructive Seizure Agreement</u>**

At the time of the search of his property, Sanford agreed to the constructive seizure of the 2,956 fighting birds found at his property and signed a written agreement acknowledging that the United States has probable cause to believe these animals were involved in a violation of the Animal Fighting Venture Prohibition, 7 U.S.C. § 2156, and are thus subject to seizure and forfeiture under 7 U.S.C. § 2156(f). *See* Government Exhibit C, attached hereto. The agreement further acknowledged that, although these birds were deemed seized by the United States, Sanford would maintain actual custody of the animals until the disposition of forfeiture proceedings in connection with this case or his surrender of them to the United States. The agreement specifically provided that the animals would not be moved from his property, nor harmed, killed, or otherwise disposed of without written consent of the USDA. The agreement also provided for agents to inspect Sanford's property to ensure his compliance with the agreement.

**E. <u>Violation of Constructive Seizure Agreement</u>**

Postal records and videos indicate that Sanford sent and received live birds via Priority Express parcels. For example, he received from live birds from North Carolina in two separate parcels on December 5, 2018. Notwithstanding his constructive forfeiture agreement with the government, Sanford sent three birds to a known cockfighter in Alabama on July 30, 2019. Cockfighting is illegal not only at the federal level but in all fifty states.

USDA-OIG also conducted two inspections of Sanford's property after the search in April 2019.

On June 18, 2019, USDA-OIG and IRS agents inspected the constructively seized birds, all of which had been banded with orange bands at the time of the search. At the entrance of the farm area, agents saw eight shipping boxes for live animals which read, "Brood Fowl," for shipment to Gatesville, Texas. These boxes also had the phone number for Sanford's Philippines shipper, written on them. The agents saw that many of the orange bands had been removed and taped to the pens. The agents also saw

---

2020. http://cdfa.ca.gov/ahfss/Animal_Healthy/Newcastle)Disease_info.html.

some birds, which had no orange bands. At least two roosters were severely injured with abrasions, bruising, and raw skin exposed, consistent with having been in cockfights.

On September 18, 2019, the agents returned to Joe Sanford Gamefarm and found an injured rooster with no orange band and roosters that did not bear the orange bands. When the agents inventoried the birds in April, they inventoried various sectors where the birds were held. In one sector, there were seven game fowl that had not been accounted for during the inventory count conducted during the execution of the search warrant. In sum, Sanford had acquired 200 new game fowl in violation of the construction forfeiture agreement and in violation of the animal fighting venture prohibition. 7 U.S.C. § 2156 (b).

## V. SENTENCING ANALYSIS

Post-*Booker* sentencing is a two-step process. First, this Court must properly calculate and consult the applicable advisory guideline range. *United States v. Cantrell,* 433 F.3d 1269, 1279 (9th Cir. 2006). Once the Guidelines range is calculated, the Court must construct a reasonable sentence "in light of all the 18 U.S.C. § 3553(a) factors." *Id.* at 1280. The factors listed in § 3553(a) include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of available sentences, and the advisory guideline range. 18 U.S.C. § 3553(a). Also included are the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed training, medical care, or other treatment. 18 U.S.C. § 3553(a). Finally, the sentence should serve to "avoid unwarranted sentencing disparities." 18 U.S.C. § 3553(a)(6).

### A. The Advisory Guidelines Range Is 12 to 18 Months.

The probation officer has properly calculated the applicable guidelines range. Based on a Total Offense Level of 13 and a Criminal History Category of I, the Guidelines range is 12 to 18 months. The probation officer also properly found that a downward departure or variance is not warranted in this

case. (PSR at 17-18.) The advisory Guidelines fine range is $5,500 to $55,000.

**B. <u>Application of the 18 U.S.C. § 3553(a) Factors Supports a Term of Imprisonment.</u>**

Having considered the Section 3553(a) factors, the probation officer recommends a high-end Guidelines sentence of 18 months in prison and, finding the defendant has the ability to pay a fine, recommends a fine of $25,000. In support of this recommendation, the probation officer pointed to several significant aggravating factors including the defendant's long-term involvement (at least 14 years to nearly 40 years) in the Animal Fighting Venture conspiracy, his possession at the time of the execution of the search warrant of nearly 3,000 game fowl intended for animal fighting ventures, and his subsequent possession of an additional 200 game fowl intended for animal fighting ventures in contravention of his constructive seizure agreement. (PSR at 19-20.)

Pursuant to the plea agreement and the government's sealed filing, the United States recommends a sentence of 10 months, which represents a two-month downward variance from the low-end of the Guidelines range, and a high-end Guidelines fine of $55,000. Considering all sentencing factors, a sentence less than 10 months would not reflect the serious nature of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence to similar criminal conduct. Further, the significant aggravating factors recognized by the probation officer outweigh any possible mitigating factors, such as the defendant's age and minimal criminal history. A 10-month sentence and $55,000 fine is reasonable and appropriate.

**1. Nature and Circumstances of the Offense**

As noted above in the background section, cockfighting is an extreme form of cruelty to animals, both before, during, and after a fight. Even setting aside the suffering and killing of roosters, cockfighting is also a serious crime because it drives high-stakes illegal gambling and the concomitant threats and violence that attend such gambling, it burdens municipal and charitable entities that care for animals, and it threatens community safety.

**2. The History and Characteristics of the Defendant**

Some, if not many, participants in cockfighting are motivated mainly by financial gain and are simply indifferent to the suffering of the animals. Others, by contrast, seem to affirmatively take

pleasure in the violent aspects of the blood sport.

The evidence shows that Sanford was not simply someone who dabbled in cockfighting, but rather, took his pursuits seriously enough for nearly four decades to breed and raise gamecocks for sale and shipment to others domestically and abroad for fighting purposes. He had also attended and participated in high-profile cockfighting events for years.

Utilizing the price Sanford charged for the trio of birds he sold during the undercover operation, the 2,956 fighting birds found at Sanford's property during the search, which represents a snapshot of Sanford's cockfighting enterprise over decades of involvement, would have a retail value of approximately $1,083,866. Excluding the pullets, the value would have been $257,033. As noted above, the IRS determined that Sanford's cockfighting business was a purely cash business that was untraceable. In addition, Sanford was involved in high-level domestic and international cockfighting events where the purses ranged in the thousands of dollars. In the video of the defendant, aka "Chicken Joe," referenced above, Sanford noted that certain tournaments in Arizona had purses of over $130,000. *See also* Government Exhibit D, attached hereto (showing purses at $2,000 in U.S. Dollars to $60,000 "dolares"[12] at the Golden Rooster Tournaments in Peru where Sanford was an entrant). Given the value of Sanford's fighting birds at one moment in time and his own cockfighting winnings, a fine at the high-end of the Guidelines range, $55,000, is reasonable.

3. **Seriousness of the Offense, Respect for the Law and Just Punishment**

Over the last fifteen years, there has been increased public awareness of the serious, violent nature of animal fighting, as reflected by Congress's repeated strengthening of the Animal Welfare Act.[13] On April 15, 2016, the Sentencing Commission voted to increase the base offense level for most

---

[12] Peru's monetary unit is the nuevo sol.

[13] The Animal Welfare Act was amended in 1976 to prohibit animal fighting ventures. Pub. Law 94-279. Congress has strengthened the law three times since 2007: the Animal Fighting Prohibition Enforcement Act of 2007, Pub. Law 110–22, 121 Stat. 88, which increased animal fighting from a misdemeanor with a one-year statutory maximum to a felony with a three-year statutory maximum; the 2008 Farm Bill, Pub. Law 110–234, Sec. 12407, 122 Stat. 923, which raised the statutory maximum to five years, relaxed the interstate commerce element, and added substantive prohibitions; and, most

animal fighting offenses (including the ones charged here) from 10 to 16 points, effective November 1, 2016. This amendment of the substantive guideline by the Sentencing Commission further underscores the seriousness of the offense. *See* Sentencing Guidelines for United States Courts, 81 Fed. Reg. at 27,265 ("[t]he Commission [ ] determined that the increased base offense level better accounts for the cruelty and violence that is characteristic of these crimes"). Further, given the extensive, secretive networks that are needed to solicit opponents and to locate, buy and sell fighting birds of particular coveted bloodlines, such as the Yellow-Legged Hatch, Kelso and Sweater–breeds that Sanford raised–cockfighting is organized crime in the traditional sense of that term. It is a serious offense, often driven by large amounts of money.

Sanford's conduct following the search of his property and prior to his indictment shows that he did not appreciate the seriousness of the offense or have respect for the law. 18 U.S.C. § 3553(a)(2)(A). As noted above, Sanford continued to acquire and sell gamecocks intended for animal fighting ventures Further, Sanford had been involved in raising gamecocks and attending cockfights for nearly four decades, notwithstanding the fact that it is illegal under both federal and California law.

### 4. Need to Afford Adequate Deterrence to Criminal Conduct

Cockfighting is a highly secretive enterprise that is difficult for law enforcement and investigative professionals to infiltrate. A cockfighting investigation requires many of the same skills and resources employed in major undercover narcotics investigations, thus challenging the resources of any agency that seeks to respond to it. An additional complication is the evidence likely to be seized in connection with cockfighting investigations—living creatures who must be provided necessary care pending surrender or judicial process. Given the limited law enforcement and animal-care resources available for cases such as this, and the strain it places upon municipal and charitable animal shelters, it is imperative that the sentences imposed in the few cases that are able to be brought send a strong message of deterrence. Those who choose to brutalize animals for entertainment and profit must know

---

recently, the 2014 Farm Bill, Pub. Law 113-79, Sec. 12308, 128 Stat. 649, which made attending animal fights a misdemeanor offense and added a felony offense for bringing anyone 16 years or younger to an animal fight.

that their criminal conduct will be severely punished. Consequently, only a prison sentence and a significant fine will "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B).

### 5. Avoiding Unwarranted Sentencing Disparities Among Similarly Situated Defendants

People participate in cockfighting at different levels. The very top tier is occupied by people like Sanford, who have developed a reputation for success in the fighting ring, sometimes over years, and who have capitalized on that reputation by breeding and selling fighting birds to other cockfighters. The industry even recognizes its own celebrities in underground magazines and similar electronic publications. A top-tier participant, like Sanford, rightly merits an appropriate prison sentence.

In what is believed to be the only other cockfighting case in this district, *United States v. Thomas Lee Crow*, 1:17-cr-242 NONE-SKO, U.S. District Judge Lawrence J. O'Neill sentenced the defendant to two years in prison. Crow also had a CHC I and a Guidelines range of 12 to 18 months. He was a local cockfighter and breeder, who was not involved in international shipments of birds intended for animal fighting ventures. He was caught red-handed at a small clandestine cockfighting event in Fresno County and a subsequent search of his property revealed approximately 200 gamecocks intended for animal fighting.

## VI. <u>CONCLUSION</u>

Considering all of the 18 U.S.C. § 3553 factors and the relevant guideline provisions, the Court should sentence Sanford to 10 months' incarceration and impose a $55,000 fine. Sanford was not a casual participant in cockfighting. He not only participated in cockfighting events but raised large quantities of gamecocks for sale and shipment domestically and internationally. A 10-month prison sentence is appropriate to reflect the acute suffering of the gamecocks that Sanford sponsored, fought, and sold to other cockfighters. In making this recommendation, the government (and the Guidelines) has factored in Sanford's post-indictment acceptance of responsibility, Criminal History Category I, and information contained in its sealed filing.

As noted in its sealed filing, forfeiture is not an issue, since Sanford voluntarily surrendered all of his game birds following his indictment and assisted in the placement of his hens with an animal sanctuary.

Dated: April 5, 2022

PHILLIP A. TALBERT
United States Attorney

By: /s/ Karen A. Escobar
Karen A. Escobar
Assistant United States Attorney